IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Daniel Ochoa,<br><br>　　　　Petitioner,<br><br>vs.<br><br>John Ontiveros, et al,<br><br>　　　　Respondents. | No. CIV 05-3787-PHX-DGC (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, U.S. DISTRICT JUDGE:

Petitioner Juan Daniel Ochoa filed a petition for writ of habeas corpus on November 21, 2005, challenging his convictions in Yuma County Superior Court for attempted first degree murder, aggravated assault, armed robbery, conspiracy to commit murder and kidnapping. Because Ochoa had prior felony convictions, and committed the offenses while on parole, the trial court imposed concurrent life sentences. Ochoa raises eleven grounds for habeas relief. Respondents have filed an Answer,[1] and the Court conducted a limited evidentiary hearing on the issue of ineffective assistance of counsel. Respondents contend that Ochoa's grounds are either procedurally defaulted or without merit. The Court agrees and recommends that his petition be denied and dismissed with prejudice.

---

[1] Respondents initially argued that Ochoa's petition was untimely. *See* Doc. #20. The Court disagreed and recommended to the District Court that Respondents be required to file an Answer addressing the merits of the petition. *See* Doc. #25. The District Court adopted the Report and Recommendation and ordered Respondents to file such an Answer. *See* Doc. #27.

**BACKGROUND**

The facts supporting Ochoa's convictions and the procedural history of his trial are summarized in the court of appeals' memorandum decision:

> The victim, Miguel Sanchez ("Miguel") was introduced to Appellant and his cousin Luis Carlos Ochoa Munive ("Carlos") by Felipe Ortiz ("Palon"). Appellant and Carlos were engaged in selling methamphetamines. Miguel lived with his cousin, Ignacio Leon ("Nacho"), who was also involved in the drug trade.
>
> Appellant and Carlos arranged for the sale of one-half pound of methamphetamines to Miguel and Nacho for $4,000. After the drugs were delivered, Nacho gave Appellant and Carlos a down payment of $700. However, the remainder of the money was never paid. Appellant and Carlos believed Miguel had possession of the money owed them.
>
> On July 3, 1993, Appellant and Carlos attempted to find Miguel. They stopped at the apartment of one of his friends, Sandra Haros, who gave them information as to Miguel's whereabouts. They tracked Miguel to Nacho's house, saw Miguel arriving there in a taxi and forced him at gunpoint into a vehicle driven by Palon. They asked Miguel about the $3,300 owed them, but Miguel denied having it.
>
> At the direction of Appellant and Carlos, Palon drove Miguel to a deserted field. Appellant and Carlos took Miguel's wallet and told him that if he did not have the money, he was going to die. They forced Miguel out of the car and told him to kneel down. According to Miguel, both Appellant and Carlos began shooting at him and, afterward, Palon drove them away. However, ballistic tests could not conclusively establish whether one or more guns had been fired at the scene.
>
> Miguel survived and dragged himself to a nearby street for help. When police arrived, Miguel said he had been shot by a friend of Palon, described the vehicle and said it was headed for Mexico. However, Miguel lied to police about why he was shot and denied at first that drugs were involved. Appellant, Carlos and Palon drove to San Luis, Sonora, Mexico. Police officers in Arizona coordinated search efforts with police officers in Mexico. Appellant, Carlos and Palon were later arrested in Mexico by local police officials and released the next day. Appellant was arrested a week later in Palm Springs.
>
> Appellant, along with Carlos and Palon, was indicted for attempted first degree murder, aggravated assault, armed robbery, conspiracy to commit first degree murder and kidnapping. The State alleged that Appellant had two prior felony convictions and that he committed the instant offenses while on parole from California on a conviction for possession of controlled substances.
>
> At trial, Appellant testified on his own behalf. He denied that he was involved in the crimes. He admitted he was in the car when Palon drove Miguel to the desert, but claimed that Carlos, acting alone, kidnapped, assaulted, robbed and attempted to murder Miguel. He sought to bolster his defense by reference to a Mexican police report (Exhibit "F") indicating that

> Carlos had confessed to the Mexican police when arrested that he [Carlos] had "unloaded the clip on Miguel."
>
> Appellant was convicted of all charges. Appellant filed a motion for new trial and two addenda. The motion for new trial was denied. Prior to sentencing, Appellant filed a motion to reopen the motion for new trial, or vacate judgment, or grant post-conviction relief on the grounds of newly-discovered evidence along with supporting offers of proof.
>
> Appellant was sentenced to concurrent terms of life imprisonment without possibility of parole for 25 years for each of the convictions. Subsequently, the trial court denied the motion to vacate judgment, leaving open the possibility of Appellant filing a petition for post-conviction relief. Appellant separately appealed from the convictions and sentences and the order denying the motions to vacate judgment. This Court consolidated the appeals.

(Doc. #20, Exh A at 2-4).

<u>Direct Appeal Proceedings</u>

On appeal, Ochoa raised the following issues:

(1)  The trial court abused its discretion by limiting the cross-examination of the victim regarding specific instances of conduct pursuant to rule 608(b), Ariz. R. Evid.;

(2)  The trial court abused its discretion in denying the motion for new trial on the grounds that the jury did not have Exhibit "F" at the beginning of their deliberations and the prosecutor disparaged the contents of Exhibit "F" during his closing argument; and

(3)  The trial court abused its discretion in denying the motion to vacate judgment.

(*Id.* at 4-5).

The court of appeals found no abuse of discretion in limiting the cross-examination of the victim because evidence of his prior arrest for bad checks, guns and drugs, and the fact that he was supporting a pregnant girlfriend, while indicative that he is not a model citizen, was not necessarily probative of his truthfulness (*Id.* at 6-7). The court of appeals also found no abuse of discretion in limiting cross-examination of the victim concerning the state's agreement not to prosecute Miguel, in exchange for his favorable testimony at Ochoa's trial. The court of appeals reasoned that there was no evidence that such an agreement existed, so the only purpose of cross-examining would be improper impeachment of the general credibility of a witness with a specific instance of misconduct (*Id.* at 7).

The court of appeals also found no abuse of discretion in the inadvertent misplacing of Exhibit "F" which resulted in the jurors not having it before them at the beginning of their deliberations. After receiving it, the jurors continued to deliberate, so the court found there was no prejudice to Ochoa (*Id.* at 9-10). Regarding the prosecutor's comments during closing argument about Exhibit "F", the court of appeals found the comments proper argument: that the Mexican police report was incomplete and inconsistent with the testimony of the State's witnesses, including two eyewitnesses to the crime and Ochoa's testimony regarding the circumstances of his arrest (*Id.* at 11). Regarding the prosecutor's comments about alleged corruption of the Mexican police, the court of appeals reviewed the statements for fundamental error, because counsel had not objected to the comments. The court concluded that viewing the record as a whole, the comments were not capable of so influencing the jury as to deny Ochoa a fair trial (*Id.* at 12).

Finally, the court of appeals considered Ochoa's motion to reopen the motion for new trial. He alleged newly-discovered evidence consisting of documents indicating that Carlos had been charged in Mexico with illegal possession of a firearm and released on bond. Ochoa argued that this supported his claim of prosecutorial misconduct because the prosecutor knew of this evidence and did not disclose it, and because it contradicted a state witness's testimony that Carlos was never prosecuted and simply "turned loose." The court of appeals agreed with the trial court that whether or not Carlos was charged with a crime and released was not relevant. Therefore, the court of appeals concluded that any error in not disclosing such a fact, if it existed, was harmless (*Id.* at 13-14). The Arizona Supreme Court denied review on July 18, 1997 (Doc. #20, Exh D).

Post-Conviction Proceedings

Several years after the supreme court denied review of Ochoa's direct appeal, Ochoa filed a Petition for Post-Conviction Relief along with several discovery motions.[2] He later

---

[2]Although Ochoa filed a Notice of Post-Conviction Relief in 1996, that petition was never resolved. *See* Doc. #25 at 2, n. 1.

- 4 -

1  filed a supplemental petition in which he argued that certain specific constitutional rights
2  were violated as follows: (1) when the prosecution withheld *Brady*[3] evidence; (2) by the
3  mismanagement of the Yuma County Contract System and its adverse impact on trial
4  counsel's representation; (3) by the prejudice caused by trial counsel's negligence and
5  malpractice; and (4) by the Yuma County Jury Selection Process (Doc. #37, Exh J). He also
6  argued that (1) additional disclosure was necessary to provide more proof of prejudice; (2)
7  an evidentiary hearing was required; (3) his right to counsel was violated; and  (4) his right
8  to the effective assistance of appellate counsel was violated by counsel's acts and omissions
9  (*Id*.).

10  The trial court dismissed the petition, finding in part as follows:  (1) the *Brady* claim
11  is both precluded and without merit because the court of appeals found no evidence of any
12  agreements between the prosecutor, the victim and Sandra Haros, and the record is complete
13  in showing there were no agreements; (2) the operation of the indigent defense contract
14  system in Yuma County is totally irrelevant to Ochoa's claim of ineffective assistance of
15  counsel; (3) Ochoa's claims of ineffective assistance of trial counsel do not amount to errors
16  in representation, no facts claimed would create a reasonable probability of a different
17  outcome, and the claimed incompetence regarding jury instructions is waived and now
18  precluded; (4) appellate counsel cannot be ineffective for failing to raise issues which have
19  no merit; (5) no evidence has been presented which suggests that the jury selection process
20  employed by Yuma County systematically excludes certain minority groups, and in any case,
21  Ochoa passed the panel without objections and did not raise the issue on appeal; and (6)
22  Ochoa's Sixth Amendment claim was waived on appeal, is precluded, and is without merit
23  (Doc. #20, Exh F at 3-5). In denying Ochoa's ineffective assistance claim, the trial court
24  noted:

> "Evidence of the defendant's guilt was substantial. This is not a case of the defendant being in the wrong place at the wrong time or a case of guilt by association. The defendant, a drug dealer sought retribution from the

---

[3]*Brady v. Maryland*, 373 U.S. 83 (1963).

- 5 -

> victim when full payment for a drug transaction was not forthcoming. Witnesses testified he participated in the kidnaping, assault and attempted murder of the victim. There was credible testimony that the defendant also shot the victim and left the victim to die in the field.

(*Id.* at 4).

Ochoa originally filed a 59-page petition for review in the court of appeals, which the court rejected for noncompliance with page limitations, and ordered that he file a petition not exceeding 25 pages. Ochoa then filed a 25-page petition for review, raising the following issues: (1) was it reversible error to deny all claims of *Brady* violations and other prosecutorial misconduct; (2) was it reversible error to deny every discovery request to confirm the quantity and quality of the *Brady* violations and prosecutorial misconduct; (3) did the Yuma County Indigent Legal Defense system in 1995-1996 operate in violation of *Joe U. Smith*[4], given *Zarabia v. Bradshaw*[5] and case specific evidence; (4) were petitioner's Fifth, Sixth and Fourteenth Amendment rights to counsel and due process violated by multiple and extreme examples of *Strickland*[6] error; (5) was it reversible error to deny every motion for funds to access expert witnesses and investigators; (6) was it reversible error to deny all of Petitioner's discovery motions to prove *Joe U. Smith* violations or trial counsel's history of malpractice; (7) was it reversible error to deny an evidentiary hearing; (8) were Petitioner's Sixth/Fourteenth Amendment rights to counsel, due process and equal protection violated by appellate counsel's *Strickland* error; and (9) was it error for a Yuma judge to decide the Rule 32 litigation (Doc. #37, Exh K). The court of appeals and the supreme court denied review (Doc. #20, Exh H, I).

Habeas Petition

In his federal habeas petition, Ochoa raised the following eleven grounds:

---

[4] 140 Ariz. 355 (1984).

[5] 185 Ariz. 1 (1996)

[6] *Strickland v. Washington*, 466 U.S. 668 (1984).

- 6 -

(1) Fifth and Fourteenth Amendment due process rights were violated in that the state courts erroneously found that Ochoa's *Brady* claims were asserted and denied on direct appeal;

(2) Fifth, Sixth, and Fourteenth Amendment due process rights and rights under *Brady* were violated in that the prosecution granted transactional immunity to key witnesses by dismissing pending felony cases against them under false pretenses and subsequently denied granting such transactional immunity;

(3) Fifth and Fourteenth Amendment due process rights were violated in that Ochoa was denied access to *Brady* material;

(4) Sixth Amendment right to counsel was violated in that Ochoa's trial counsel failed to conduct investigation/litigation regarding obvious prosecutorial misconduct;

(5) Fifth and Fourteenth Amendment due process rights were violated in that Ochoa was erroneously precluded from proving his post-conviction claims by subpoenaing records and/or calling witnesses at an evidentiary hearing;

(6) Sixth Amendment right to counsel was violated in that trial counsel failed to adequately conduct any phase of the pretrial or trial litigation in several respects;

(7) Sixth Amendment right to counsel was violated in that the Yuma County contract system guaranteed that there would be substandard lawyering on behalf of indigent defendants in the mid-1990s and that Ochoa's trial counsel's caseload impacted on the preparation of his case;

(8) Due process rights were violated in that the Rule 32 court denied every motion to obtain evidence to prove the Yuma County contract system caused habitual errors under *Strickland* and malpractice by Ochoa's trial counsel;

(9) The right to counsel under *Strickland* was violated in that appellate counsel committed malpractice in every possible way when offering the Opening Brief;

(10) Sixth Amendment right to a fair trial was violated in that the Yuma county venire selection process caused systematic under-representation of minorities given the disparity of Hispanics/poor people on jury venires; and

(11) due process rights were violated in that there was a denial of a change of venue, or recusal of the Yuma County bench, at the inception of the post-conviction process.

(Doc. #13 at 2).

<u>Evidentiary Hearing</u>

On August 14, 2008, the Court presided over an evidentiary hearing and the only testimony was provided by Ochoa's trial counsel, Paul Hunter, a 75 year-old retired attorney. Ochoa's attorney began with general questions about Hunter's legal career, which has

- 7 -

1  spanned several decades.  It included jobs as both a prosecutor and in private practice as a
2  criminal defense attorney.  Hunter testified that he had probably tried thousands of cases and
3  at some point became a certified specialist in criminal law.  He testified that he had read the
4  entire trial transcript once and the testimony of the major prosecution witnesses twice.
5  During the course of the hearing, he testified numerous times when asked about a particular
6  fact that he had read it in the transcript but had no independent recollection of that fact.  At
7  one point during the hearing, he specifically testified that he did not recall events leading up
8  to his representation of Ochoa, what happened during his trial, and most of the events after
9  the trial.

10  Ochoa's attorney then asked Hunter general questions about his practice, including
11  his use of investigators, how often the judge paid for investigators, the practice of the Yuma
12  County Attorney's Office regarding grants of immunity, and the use of interpreters.  Hunter
13  testified repeatedly that the reading of the transcript did not refresh his recollection of the
14  trial, that he does not recall the trial, and that he can't bring back to memory any pictures of
15  the trial or scenes of the trial.  He testified that he had undergone five surgeries in the last six
16  months of 2007, one in which surgeons replaced an aortic valve in his heart, and that since
17  then his memory has been affected more than at any time prior to that.

18  Counsel then asked Hunter questions about 1995, the year during which the trial
19  occurred, to explore his memory.  Hunter testified that he had no independent recollection
20  of either the contract system for hiring criminal defense attorneys that existed in Yuma
21  County that year, or any aspects of his practice that year.  He testified that he had a general
22  recollection of certain aspects of criminal practice in Yuma County, but that it was not
23  limited to any particular time frame.  For example, he testified that he had a general
24  recollection of the use of expert witnesses; the continuing legal education requirements;
25  disclosures by the prosecutor, including police reports, taped or transcribed witness
26  interviews, and crime scene photographs; and his subsequent review of the disclosure packet
27  provided by the prosecutor.  He also testified generally as to his practice of subpoenaing
28

1  police officers whose testimony contradicted the prosecution's theory of the case, and his
2  preference for putting forth several defenses, if it was appropriate in a particular case.

3  In response to counsel's questions, Hunter gave general information as to his
4  recollections about the use of and payment to investigators. He testified that he had no
5  recollection as to whether he had used an investigator in the Ochoa trial. He testified
6  generally about his motion practice during his career, including the filing of motions to
7  compel and to suppress evidence, to seek funding for experts, and to make a record for
8  appeal. When asked about the proper standard of care for developing a theory of defense,
9  Hunter stated that the only standard he could recall was to use all his education and training
10 and energy to defend each client to the best of his ability using the facts available in the case.
11 This included interviewing witnesses and reviewing all available reports.

12 Ochoa's attorney then questioned Hunter about some specific aspects of the 1995 trial.
13 While having no independent recollection of the trial, Hunter testified that he had requested
14 a "mere presence" instruction more than once in his career, without any recollection as to
15 whether he may have done so in this case. When asked why he would not have requested
16 such an instruction in this case, he speculated that the judge may have let him know it would
17 not be allowed, or that Hunter might have thought it would have a reverse effect because,
18 from reading the transcript, he believed that there was more than mere presence existing in
19 this case. He testified that he may have thought it would insult the jurors to suggest that
20 Ochoa was "merely present" when the evidence indicated otherwise. He testified that this
21 had been his experience with a previous jury, and that might have influenced his decision in
22 this case, although he could not recall.

23 Ochoa's attorney next asked him about the use of a "third person responsible"
24 instruction. Although Hunter could not recall, he believes he had requested that instruction
25 during his career. When asked why he did not offer the instruction in this case, he testified
26 that he did not recall. However, he testified that after reading the transcript, he had
27 concluded that this was not necessarily a case with a good defense. When asked to explain
28

why, he pointed to the testimony of three eyewitnesses, including the victim who had been shot six times and lived, all of whom testified that Ochoa was the one who shot the victim. Hunter was then asked about disclosure requirements and the practice of the Yuma County Attorney's office with regard to disclosures.  He testified that he had no independent recollection of any withholding of exculpatory evidence except for one case in which he had been involved.  He also had no recollection of any other attorneys complaining about a practice by the Yuma County Attorney's office of withholding exculpatory evidence. Counsel then asked general questions about the proper cross-examination of a witness who had been drinking alcohol or using drugs or was mentally ill at the time of the incident about which he or she was providing testimony.  He followed with questions about the proper impeachment of a key witness with his or her prior inconsistent statements. Although Hunter was able to give general answers to these questions, he had no recollection of any such cross-examination as a part of any particular strategy during Ochoa's trial.

Because of his memory deficit, he testified that he had no recollection of what steps he had taken during the trial to challenge the victim's credibility.  He similarly had no recollection of whether he investigated the Yuma County Attorney's possible use of tacit grants of immunity with either the victim or the principal witnesses, or what efforts he made to investigate the ballistics evidence.  He further had no recollection of telling the jury in opening statement that he would call Dr. Ridgemont as a witness, and the reason why he did not testify at Ochoa's trial.  He had no recollection of whether he tried to contact Mexican police officers or whether he had asked an investigator to do so, although he did remember that during his career he had traveled to Mexico to interview police officers.  He also had no recollection about the circumstances surrounding the decision to have Ochoa testify at trial.

## DISCUSSION

Procedural Default

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court.  28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S. 364, 365-

66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir.1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Tamalini v. Stewart*, 249 F.3d 895, 898 -99 (9th Cir. 2001). The exhaustion requirement will not be met where the Petitioner fails to fairly present his claims. *Roettgen*, 33 F.3d at 38.

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. *See Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring). If remedies are available in state court, then the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. *Id.* However, if the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602-605 (9th Cir. 1989). The federal court may decline to consider these claims unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Further, a procedural default may occur when a Petitioner raises a claim in state court, but the state court finds the claim to be defaulted on procedural grounds. *Coleman*, 501 U.S.

at 730-31. In such cases, federal habeas review is precluded if the state court opinion contains a plain statement clearly and expressly relying on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *See Harris*, 489 U.S. at 260. A state procedural default ruling is "independent" unless application of the bar depends on an antecedent ruling on the merits of the federal claim. *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Stewart v. Smith*, 536 U.S.856 (2002). A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'" *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982)). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, just as in cases involving defaulted claims that were not fairly presented, federal habeas review of the claims is barred unless the prisoner can demonstrate a miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

Respondents argue that several of Ochoa's habeas claims are not cognizable on habeas review and/or are unexhausted and procedurally defaulted. Specifically, they contend that the first, third, fifth, seventh, eighth, tenth and eleventh claims, and portions of the fourth and sixth claims are subject to dismissal without a discussion of the merits. The Court agrees.

Ochoa's first and eleventh claims - that the trial court violated due process in state post-conviction proceedings by finding his *Brady* claim precluded, and that he was denied due process by the trial court's denial of a request for change of venue or for a recusal of the entire Yuma County bench in post-conviction proceedings - were both presented to the court of appeals as violations of state law. His generalized references to due process are insufficient to establish exhaustion. *See Hiivala v. Wood*, 195 F.3d 1098, 1107 (9th Cir. 1999). Although Ochoa mentions the due process clause in his petition, the issues involve an analysis of state law, and therefore cannot form the basis for federal habeas relief. *See* 28 U.S.C. § 2254(a). This Court will not reconsider the state court's determination regarding state law; it will honor the trial court's statutory construction. *Estelle v. McGuire*, 502 U.S.

1  62, 67-68, 112 S.Ct. 475, 480 (1991); *Melugin v. Hames*, 38 F.3d 1478, 1487 (9th Cir. 1994).
2  Similarly, his seventh claim, contending that the Yuma County indigent defense contract
3  system guaranteed substandard lawyering was presented to the court of appeals as a violation
4  of state law, specifically *State v. Joe U. Smith* and *Zarabia v. Bradshaw*. The Court will not
5  reconsider the issue. *Id*. His tenth claim, that the Yuma County jury selection process
6  violated his right to a fair trial by systematic under-representation of racial and economic
7  minorities was not presented to the court of appeals, and is therefore unexhausted. *Swoopes*;
8  *Roettgen*. Because he would have no remedy were he to return to state court, it is
9  procedurally defaulted. *Teague*.

10  In addition, the first, third, fifth, eighth and eleventh claims are not cognizable on
11 habeas review because they allege only procedural errors in state post-conviction
12 proceedings, and federal habeas review is not available to address such claims of error. *See*
13 *Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998); *Franzen v. Brinkman*, 877 F.2d 26 (9th
14 Cir. 1989). Arguments related to a Rule 32 court's finding of preclusion (claim 1), denial
15 of discovery requests (claims 3 and 8), denial of an evidentiary hearing (claim 5), and denial
16 of request for change of venue or recusal (claim 11), all allege errors in state post-conviction
17 proceedings, and provide no basis for habeas relief. *Id*.

18  Finally, Respondents contend that certain portions of Ochoa's ineffective assistance
19 claims are unexhausted and procedurally defaulted because they were not presented to the
20 Court of Appeals. Specifically, Ochoa raises three alleged instances of ineffective assistance
21 in his sixth claim that Respondents contend are unexhausted: (1) failure to object to a
22 renunciation instruction; (2) failure to object to the *Portillo*[7] reasonable doubt instruction;
23 and (3) failure to object to the prosecutor's closing argument. Ochoa acknowledges that
24 these claims were presented in his initial petition for review, which was rejected by the court
25 of appeals as noncompliant because of excessive pages. He also acknowledges that his
26 second petition for review did *not* include these claims. This is not a fair presentation of his

---

[7]*See State v. Portillo*, 182 Ariz. 592 (1995).

- 13 -

1 claims to the court of appeals; the exhaustion requirement has not been met. *Roettgen*, 33 F.3d at 38. In addition, because he would have no remedy were he to return to state court, the claims are procedurally defaulted. *Teague*. Ochoa does not argue that the page limitation is unfairly enforced; his requirement to abide by that procedural rule cannot constitute cause for a procedural default. *See Mueller v. Angelone*, 181 F.3d 557, 585 (4th Cir. 1999).

Merits Discussion on Remaining Claims

*Second Claim*

Ochoa argues that the prosecution failed to disclose evidence of tacit immunity agreements between the State and both Miguel and a witness, Sandra Haros, in exchange for their testimony at his trial. He contends that the state court did not rule on the merits of this claim, finding it precluded, thus entitling him to *de novo* review. What the trial court found precluded was the factual finding by the court of appeals that no agreement existed. *See* Doc. #20, Exh F at 3. The trial court did in fact conclude that there was no *Brady* violation, thus ruling on the merits. Ochoa cannot show that this ruling was either contrary to or an unreasonable application of *Brady*. The prosecutor informed defense counsel, the trial court, *and the jury* that Haros had been offered immunity for "any disclosures she had made in terms of drug crimes in her discussions with us" (Doc. #37, Exh P at 187-88). Although Haros testified that there was no such agreement, she admitted she had been arrested on four felony charges, including a drug charge, that she became an informant for the police because she believed the charges would be dismissed in exchange, that she was in fact never prosecuted for those charges, and that she believes it was because she had become an informant (*Id*. at 257-59, 262-65, 268). In light of Haros's testimony, Ochoa cannot show any prejudice from the failure to disclose any alleged agreement. *See Strickler v. Greene,* 527 U.S. 263, 281-282 (1999).

Regarding the failure to disclose any alleged agreement with Miguel, the court of appeals concluded "there was no evidence such an agreement existed" (Doc. #20, Exh A at 5-7). This factual finding is presumed correct, and Ochoa has the burden of rebutting it by

- 14 -

1  clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). This he cannot do. Miguel
2  testified there was no such agreement; the prosecutor contended throughout both the trial and
3  the post-conviction proceedings that there was no such agreement (Doc. #37, Exh P at 81,
4  97, 125-28; Exh T: R.T. 4/27/01 at 71-83; Exh U: R.T. 8/3/01 at 121-42). The only evidence
5  offered by Ochoa to rebut this claim is the fact that Miguel was not prosecuted on unrelated
6  criminal charges for which he had previously been arrested. Both the trial court and the court
7  of appeals correctly found that the mere fact of nonprosecution does not establish a leniency
8  agreement (Doc. #20, Exh A at 5-7; Exh F at 3; Doc. #37, Exh T at 71-83; Exh U at 121-42).
9  Ochoa has not rebutted this finding. In the absence of any agreement, there is no duty to
10 disclose. *See Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994).

*Fourth and Sixth Claims*

Ochoa first argues that trial counsel was ineffective for failing to object to alleged *Brady* violations. To establish ineffective assistance of counsel under the standard enunciated in *Strickland*, Ochoa must demonstrate that counsel's performance was deficient and that this deficient performance caused him prejudice. He must show that but for counsel's deficient performance, there is a reasonable probability that "the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. Because the state courts found no *Brady* violations, counsel cannot be considered ineffective for failing to pursue a meritless claim. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996). In addition, the record reflects that trial counsel did question both witnesses about possible leniency agreements.

Next Ochoa argues that trial counsel was generally unprepared. Specifically, he argues that counsel failed to file pretrial motions, but does not indicate what motions he should have filed. He asserts that counsel failed to "properly challenge the prosecution's case" in opening statement and failed to "adequately address" Haros's alleged lack of credibility but does not indicate what counsel should have done. He also criticizes counsel for failing to impeach Palon on the "disparity between his original charges and his plea

- 15 -

1  agreement," although the record shows he did cross-examine Palon about his plea (Doc. #37,
2  Exh Q at 31-33). Ochoa falsely states that the judge admonished counsel. *See* Exh P at 216,
3  239, 241-42. Ochoa also contends that trial counsel told the judge he was overworked in the
4  case. However, the record reflects that counsel followed up by saying he disagreed with the
5  court's assessment that he was unprepared for trial (*Id.* at 251). More importantly Ochoa
6  does not suggest how any of his examples of trial counsel's alleged lack of preparedness
7  actually prejudiced Ochoa. To argue that counsel's closing argument was defective, thus
8  implying that another lawyer would have handled it differently or better, is not grounds for
9  a finding of ineffective assistance. The question is whether "counsel made errors so serious
10 that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth
11 Amendment." *Strickland*, 466 U.S. at 687, 689. Ochoa has not met this burden.

12 Ochoa next argues that trial counsel failed to present exculpatory evidence by
13 subpoenaing Mexican police officers to whom Carlos had allegedly admitted that he alone
14 shot the victim, and to whom Ochoa had denied all responsibility.  However, the record
15 reflects that the individual who identified himself as "Ricardo Alonzo Andrade Ochoa" was
16 five years older than Ochoa (Doc. #37, Exh R at 89-91). Although Ochoa testified the he
17 was the individual who had identified himself to the Mexican Police Officers, if the officers
18 had been subpoenaed and testified that he was not, that would have damaged his credibility.
19 It appears to have been a tactical decision on the part of counsel not to subpoena the officers.
20 Ochoa's disagreement with a tactical decision made by his attorney cannot form the basis for
21 a claim of ineffective assistance. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001).
22 His claim that trial counsel should have called Dr. Ridgemont, who Ochoa alleges heard
23 Sanchez say there was only one shooter, fails because the record does not establish such a
24 statement was made (Doc. #37, Exh P at 135). His claim that trial counsel failed to subpoena
25 Yuma officers does not fare any better because he does not specify how their testimony
26 would have benefitted him.

Ochoa also contends that trial counsel was ineffective for failing to obtain expert testimony on "methamphetamine psychosis" to show that Haros's drug-induced psychosis affected her credibility. However, the trial court denied his request for funding of such an expert because there was no evidence that Haros suffered from such a condition. In any case, Haros admitted her drug use at trial and the affect it had on her memory, so the jury was able to consider that in assessing her credibility. Her testimony at trial did not have any bearing on Ochoa's role in Miguel's kidnapping and shooting because she was not present with them at the time. Therefore, even if it could be determined that trial counsel's actions constituted deficient performance, there was no resulting prejudice to Ochoa.

Trial counsel's failure to obtain a second ballistics expert or to disclose preliminary ballistics notes is the next claim of ineffective assistance. This claim also fails under either prong of *Strickland*. Although the state presented expert testimony at trial that the use of a second weapon could not be ruled out, on cross-examination trial counsel was able to elicit the expert's opinion that he could equally not rule out the use of a single weapon (*Id.*, Exh P at 164-65, 177-80). In addition, counsel argued in closing that there was a real possibility that Carlos was the only person with a weapon (*Id.*, Exh S: R.T. 1/17/96 at 34). Not only does Ochoa fail to allege what exculpatory potential was contained in the preliminary ballistics report, he also fails to show how the lack of a second weapon would have aided his case. Miguel testified that Ochoa stepped up to him and shot him. Palon testified that he saw Ochoa shoot Miguel, and did not know if Ochoa then gave the weapon to Carlos. Both could have used the same weapon. In any event, it was not necessary for the jury to decide whether or not Ochoa shot Miguel, because Ochoa was also charged as an accomplice. The testimony that Ochoa told Haros he would kill anyone who wronged him in a drug deal, that he helped Carlos force Miguel into the car, that he asked Miguel where the drug money was and told him that he would die if he could not come up with it, that he pistol-whipped Miguel, and that he got out of the car with Carlos immediately before the shooting, was more than sufficient evidence for the jury to convict him as an accomplice.

1    Finally, Ochoa contends that trial counsel was ineffective because of his failure to
2 request a "mere presence" instruction. Assuming *arguendo* that there was sufficient evidence
3 of Ochoa's mere presence at the crime scene to allow such an instruction, the jury was
4 instructed on this issue by other means. The trial court's instructions on the presumption of
5 innocence, the prosecution's burden of proof, the elements of the crimes charged, and the
6 scope of liability as either a principal or an accomplice, all informed the jury that they could
7 not convict Ochoa based solely on his presence at the scene (*Id.*, Exh R at 118-30). In
8 addition, his conviction for the conspiracy charge required separate specific findings by the
9 jury that he had agreed with one or more persons to kill Miguel and that he had the intent to
10 promote or assist committing the crime (*Id.* at 125). These findings, in addition to the above
11 instructions, refute any notion that Ochoa was merely present at the time of the incidents
12 charged; he therefore suffered no prejudice as a result of counsel's failure to request the
13 instruction. Ochoa's claim that trial counsel should have requested a "third person
14 responsible" instruction fails because he does not specify what the instruction would have
15 said, and the trial court's other instructions adequately informed the jury of the respective
16 liability as either a principal or an accomplice.

*Ninth Claim*

18    Ochoa's final claim is the ineffective assistance of appellate counsel; this claim also
19 fails. Initially, the Court notes the strong presumption that appellate counsel's performance
20 was reasonable and competent. *Strickland*, 466 U.S. at 689. Ochoa first contends that the
21 opening brief "guaranteed failure" because it was so poorly written. Counsel's pleading
22 adequately described the issues presented in order for the court of appeals to consider them.
23 That it could have been better written does not constitute ineffective assistance. *Strickland*,
24 466 U.S. at 687, 689. Ochoa has made no showing that his arguments on appeal would have
25 succeeded if they had been presented more cogently.

26    His final argument concerning appellate counsel is that he failed to present the claims
27 that were later urged by counsel in post-conviction proceedings. However, those claims were

rejected by the trial court as being without merit. As the Court earlier stated, it can never be deficient performance to fail to take a futile action. *Rupe*, 93 F.3d at 1445. More importantly, the very process of focusing on those arguments on appeal which are more likely to prevail, "far from being evidence of incompetence is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). Ochoa has not met his burden on any of his claims.

**IT IS THEREFORE RECOMMENDED** that Juan Daniel Ochoa's petition for writ of habeas corpus be **denied and dismissed with prejudice** (Doc. #1).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation[8] within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 17th day of February, 2009.

David K. Duncan
United States Magistrate Judge

---

[8] In light of the numerous previous continuances granted to the parties in this case, and the age of the case, the Court will not be inclined to grant any extensions of this deadline.

- 19 -