**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Daniel Ochoa, ) | No. CV-05-3787-PHX-DGC (DKD) |
| Petitioner, ) | **ORDER** |
| vs. ) | |
| John Ontiveros, Warden of the Florence Department of Corrections; and Attorney General of the State of Arizona, Terry Goddard, ) | |
| Respondents. ) | |

Pending before the Court are Juan Daniel Ochoa's petition for writ of *habeas corpus* and United States Magistrate Judge Duncan's Report and Recommendation ("R&R"). Dkt. ##1, 70. The R&R recommends that the Court deny the petition and dismiss it with prejudice because Petitioner's claims lack merit, are procedurally defaulted, or both. Dkt. #70 at 1, 12, 19. Petitioner has filed timely, specific objections to the R&R, and a response has been filed. Dkt. ##74, 76. Additionally, Petitioner has filed a "notice of substandard briefing and explanation" regarding his objections (Dkt. #77) and a motion to prepare a transcript free of cost (Dkt. #78), both of which have been fully briefed (Dkt. ##79-80). For the reasons stated below, the Court will accept the R&R and dismiss the petition, treat Petitioner's notice of substandard briefing as a motion for leave to file further objections to the R&R and deny that motion, and deny the motion to prepare a transcript free of cost without prejudice.

## I. Background.

### A. State proceedings.

Petitioner was convicted in Yuma County Superior Court for attempted first degree murder, aggravated assault, armed robbery, conspiracy to commit murder, and kidnaping. All charges stemmed from the abduction and near-fatal shooting of Miguel Sanchez, who had failed to pay for a half-pound of methamphetamine. Dkt. #70 at 1-2 (citing Dkt. #20-1 at 2-4 (Arizona Court of Appeals memorandum decision)). After receiving a down-payment from Sanchez, Petitioner and his cousin, Luis Carlos Ochoa Munive ("Carlos"), decided to collect the outstanding balance on July 3, 1993. *Id.* at 2. After speaking with Sandra Haros, a drug user and friend of Sanchez, they located Sanchez near his house, abducted him at gunpoint, detained him in a vehicle driven by their friend Felipe Ortiz ("Palon"), and transported Sanchez to a vacant field where they could interrogate him about his drug debt. *Id.* Finding that he only had a few dollars on his person, Petitioner and Carlos forced Sanchez out of the car and into the vacant field. *Id.*

Although it is unclear whether one or both of the abductors were armed, they attempted to execute Sanchez by shooting him multiple times at point-blank range, and then departed from the scene. *Id.* Sanchez survived the shooting, dragged himself to a nearby street, and ultimately received care from emergency responders. *Id.* Sanchez lied to the police about the drug transaction leading up to his abduction, but his statements led to the arrest of Carlos and Palon in Mexico, and Petitioner in Palm Springs, California. *Id.* Although Petitioner admitted traveling in the car with Carlos and Palon, he testified at trial that he had not carried out the failed execution. *Id.* at 1-2. He relied on a Mexican police report indicating that Carlos had confessed to shooting Sanchez. *Id.* at 2. The jury convicted him of all charges, and he was sentenced to concurrent terms of life in prison without possibility of parole. Dkt. #70 at 2; *see also* Dkt. #20-1 at 22-24 (trial court verdict).

On direct appeal, Petitioner argued that the trial court had abused its discretion because it improperly (1) limited cross-examination of Sanchez about specific instances of conduct under Ariz. R. Evid. 608(b), including past drug offenses and an alleged tacit

- 2 -

agreement of non-prosecution to secure Sanchez's testimony, (2) denied Petitioner's motion for a new trial on the grounds that the jury did not have the Mexican police report at the outset of their deliberations, and that the prosecutor had disparaged its contents, and (3) denied Petitioner's motion to vacate judgment on the basis of new evidence. *Id.* The court of appeals found no abuse of discretion by the trial court. *See* Dkt. #20-1 at 2-5, 14. It reasoned that the specific instances of conduct identified by Petitioner were not probative of Sanchez's character for truthfulness and there was no evidence of an agreement not to prosecute him. Dkt. #70 at 2-3. Petitioner's remaining arguments were rejected on the merits. Dkt. #20-1 at 4-13. The Arizona Supreme Court denied review on July 18, 1997. Dkt. #70 at 3. Petitioner unsuccessfully sought post-conviction relief several years later under Arizona's Rule 32 process. *See id.* at 4-6 (describing Petitioner's arguments during post-conviction review).

**B.**     ***Habeas* petition.**

Ochoa's petition asserts the following grounds for relief:

(1)     Fifth and Fourteenth Amendment due process rights were violated because Arizona courts erroneously found that Petitioner's claims under *Brady v. Maryland,* 373 U.S. 83 (1963), were asserted and denied on direct appeal.

(2)     Fifth, Sixth, and Fourteenth Amendment due process rights and rights under *Brady* were violated; the prosecution granted immunity to Haros and Sanchez by dismissing pending felony cases against them, and concealed it.

(3)     Fifth and Fourteenth Amendment due process rights were violated because state courts denied Petitioner access to potential *Brady* evidence in post-conviction proceedings.

(4)     The Sixth Amendment right to counsel was violated because Petitioner's trial counsel failed to investigate or litigate alleged prosecutorial misconduct.

(5)     Fifth and Fourteenth Amendment due process rights were violated because Petitioner was improperly precluded from conducting an evidentiary hearing to prove his post-conviction claims.

(6) The Sixth Amendment right to counsel was violated because trial counsel was generally ineffective throughout all phases of the pretrial and trial litigation.

(7) The Sixth Amendment right to counsel was violated because the overworked Yuma County indigent defense system interfered with trial counsel's preparation.

(8) Due process rights were violated during post-conviction proceedings because the state courts denied every motion to obtain evidence showing defects in the Yuma County indigent defense system, or showing malpractice by trial counsel, that would violate *Strickland v. Washington*, 446 U.S. 668 (1984).

(9) The right to counsel under *Strickland* was violated because appellate counsel committed malpractice by delivering an inferior opening brief.

(10) The Sixth Amendment right to a fair trial was violated because the venire selection process led to under-representation of racial and economic minorities.

(11) Due process rights were violated because the post-conviction courts denied a change of venue, or recusal of the Yuma County bench.

Dkt. #13 at 2.

The petition for writ of *habeas corpus* was filed on November 21, 2005, and was followed by a host of continuances for further briefing and evidentiary development. *See* Dkt. ##18-64. On August 14, 2008, Judge Duncan presided over an evidentiary hearing to record testimony from Paul Hunter, Petitioner's trial counsel, who had since retired from practice. Dkt. #70 at 7-8. Although Hunter did not have any independent recollection of Petitioner's case, he testified about his typical approach to criminal defense during his lengthy career. *Id.* at 8-10 (describing Hunter's testimony and his memory deficit).

**C.  The R&R.**

On February 18, 2009, Judge Duncan determined that Petitioner's first, third, fifth, seventh, eighth, tenth, and eleventh grounds for *habeas* relief were subject to dismissal without analysis on the merits because they are (1) not cognizable for purposes of *habeas* review, or (2) procedurally defaulted, or (3) both. Dkt. #70 at 12. First, citing *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989) and *Ortiz v. Stewart*, 149 F.3d 923 (9th Cir. 1998),

1 Judge Duncan reasoned that those claims "are not cognizable on judicial review because they
2 allege only procedural error in state post-conviction proceedings." Dkt. #70 at 13. Second,
3 Judge Duncan reasoned that Petitioner's due process claims are improper because they seek
4 an interpretation of Arizona law that is contrary to the interpretation adopted by its courts.
5 *See* Dkt. #70 at 12-3. Third, Judge Duncan observed that Petitioner's claims for ineffective
6 assistance of counsel are unexhausted – and now procedurally defaulted – because Petitioner
7 never raised them during his state appeal. *Id.* at 13.

8 Judge Duncan considered Petitioner's second, fourth, sixth, and ninth grounds for
9 *habeas* relief on the merits. First, citing *Alderman v. Zant*, 22 F.3d 1541 (11th Cir. 1994),
10 he determined that Petitioner had made no showing that Haros or Sanchez received immunity
11 deals that might have led to *Brady* violations. Even if such agreements existed, Haros stated
12 to the jury that she was a police informant, minimizing the possibility of prejudice from her
13 testimony. Dkt. #70 at 14-15. Second, Judge Duncan ruled that Petitioner had not met his
14 burden under *Strickland* on his fourth and sixth grounds for relief because he had not
15 demonstrated that trial counsel was ineffective due to lack of preparation, his failure to
16 litigate the alleged *Brady* violations, or his failure to introduce certain exculpating evidence.
17 *Id.* at 15-18 (observing that these decisions were either factually justified or strategic, citing
18 *Wildman v. Johnson*, 261 F.3d 832 (9th Cir. 2001)). Finally, Judge Duncan ruled that
19 Petitioner could not prevail on his ninth ground for *habeas* relief because he had failed to
20 show that his state appeal might have been successful if trial counsel had presented his case
21 more "cogently," or made additional arguments that were likely futile. Dkt. #18-19.

22 Accordingly, Judge Duncan ruled that Petitioner had not met his burden on any of his
23 claims, recommended dismissal with prejudice, and notified the parties that they had ten days
24 to file specific written objections to the R&R. Dkt. #70 at 19; *see* 28 U.S.C. § 636(b)(1);
25 Fed. R. Civ. P. 72, 6(a), (6)(e). Judge Duncan noted that "[i]n light of the numerous previous
26 continuances granted to the parties in this case . . . the Court will not be inclined to grant any
27 extensions of [the ten-day] deadline." Dkt. #70 at 19. Nevertheless, Petitioner filed a motion
28 for a seven-day extension, which this Court granted. Petitioner then filed timely objections

on March 6, 2009. Dkt. ##71 at 2; 73 at 1; 74 at 1. On March 12, the day after Respondents filed a response, Petitioner filed a "notice of substandard briefing and explanation" regarding those objections, and then moved on March 15 to have a transcript of the August 14, 2008 hearing before Judge Duncan prepared free of cost. Dkt. ##77, 78.

### D.   Objections to the R&R.

Petitioner's first three objections state that the R&R relied on inaccurate findings of fact. Dkt. #74 at 2-5. First, Petitioner argues that the trial record contradicts the state courts' finding that he was a party to the methamphetamine transaction, and was therefore motivated to abduct and shoot Sanchez. Dkt. #74 at 2. Second, Petitioner argues that the R&R does not analyze findings of fact in the state post-conviction record pertaining to his claims for ineffective assistance of counsel. *Id.* Third, Petitioner asserts that the R&R should not have relied on Hunter's testimony because Judge Duncan improperly sustained objections to cross-examination regarding Hunter's "habit[s]" at trial. Dkt. #74 at 3.

Petitioner's remaining objections relate to the legal substance of his second, third, fourth, and sixth grounds for *habeas* relief.[1] First, Petitioner argues that "a wealth of evidence cinched Sanchez's guilt," leading to the inference that "the Yuma County Attorney's Office made tacit grants of immunity and lied" about not tacitly granting him immunity. Dkt. #74 at 5-7. Hence, he asserts that the R&R improperly relied on *Alderman* to recommend dismissal of his claim that a *Brady* violation prejudices his defense. *See id.* Second, Petitioner argues that the R&R misapplies *Ortiz* and *Franzen* to determine that Petitioner's third ground for relief is precluded because it only alleges state procedural errors. *Id.* at 8-9. Third, Petitioner argues that the R&R adopts circular logic to analyze his fourth ground for relief. *Id.* at 10. He explains that the Rule 32 record shows that trial counsel had a basis for litigating *Brady* violations, and that his failure to do so amounted to a *Strickland*

---

[1] Because Petitioner does not made any specific objections to the R&R regarding his other claims, the Court will decline to undertake a *de novo* review and accept the R&R with respect to those claims. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

- 6 -

1    violation. Petitioner therefore asserts that the R&R relies on an improper analysis of his
2    *Brady* claim to rule against his *Strickland* claim. Dkt. #74 at 10.

3    Finally, Petitioner argues that Judge Duncan erred as a matter of fact and law in his
4    analysis of Petitioner's more general *Strickland* claim because (1) the Yuma County indigent
5    defense system was in fact "a legal cesspool," (2) Hunter was generally unprepared and
6    overworked, and (3) Judge Duncan did not conduct a "cumulative" prejudicial analysis for
7    each of petitioner's allegations regarding trial counsel's failure to introduce additional
8    evidence, witnesses, and expert testimony. Dkt. #74 at 11-16. Although Petitioner's
9    objections contain specific citations to the R&R itself, a preponderance of his citations to the
10   record are mere blank placeholders. *See, e.g.*, Dkt. #74 at 12 ("The effect of the Yuma
11   County contract system on trial counsel was obvious. (Docket #__, p. __).").[2]

12   **III.   Discussion.**

13   Rule 72(b) requires the Court to "make a *de novo* determination . . . of any portion of
14   the magistrate judge's disposition to which specific written objection has been made[.]" *See*
15   *also Thomas v. Arn*, 474 U.S. 140, 149 (1985). The Court may accept, reject, or modify the
16   findings or recommendations made by the magistrate judge. *See* 28 U.S.C. § 636(b)(1).

17   Under the Antiterrorism and Effective Death Penalty Act of 1996, the Court may not
18   grant *habeas* relief unless the state's adjudication of the claims resulted in a decision that was
19   contrary to, or involved an unreasonable application of, clearly established federal law, as
20   determined by the Supreme Court of the United States, or resulted in a decision that was
21   based on an unreasonable determination of the facts in light of the evidence presented in the
22   state court proceedings. 28 U.S.C. § 2254(d)(1); *see Baldwin v. Reese*, 541 U.S. 27, 27

---

[2] The Court has no obligation to investigate which portions of the record Petitioner would have cited had he completed the blank citations. "'Judges are not like pigs, hunting for truffles in' the record." *Albrechtsen v. Board of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *see Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). The Court has nevertheless rooted through the record using Petitioner's citations within prior filings so it can assess his objections.

1  (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). "The Supreme Court has said that
2  § 2254(d)(1) imposes a 'highly deferential standard for evaluating state-court rulings,' and
3  'demands that state court decisions be given the benefit of the doubt.'" *Clark v. Murphy*,
4  331 F.3d 1062, 1067 (9th Cir. 2003) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7
5  (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

**A.     Objections to factual statements in the R&R.**

Petitioner's argument that he did not negotiate the sale of the methamphetamine Sanchez failed to pay for is supported by portions of the record. *See, e.g.*, Dkt. #34-7 at 69 (Sanchez testifying that he drove to meet Petitioner in Palm Springs after the deal was struck with Carlos, and that Petitioner was not present for the initial bargain)). But this does not contradict the state courts' findings that Petitioner was a party to the transaction, or that he sought to harm Sanchez. *See* Dkt. #70 at 1-2 (citing Dkt. #20-1 at 2-4). As correctly noted by Respondents, Sanchez and Haros testified that Petitioner had admitted he was involved in the transaction and that he was willing to use lethal force to collect Sanchez's debt. *See, e.g.*, Dkt. ##37-4 at 76-77, 80; 37-6 at 5 (Haros stating that "[h]e said he was willing to kill somebody if the drug deal went bad."). The record therefore offers no basis to conclude that the state court proceeding resulted in an unreasonable determination of the facts in light of the evidence presented.

Petitioner's assertion that the R&R does not account for post-conviction findings of fact relevant to his claims under the Sixth Amendment and *Strickland* is also inaccurate. *See* Dkt. #74 at 2. Judge Duncan reviewed the findings of the post conviction courts (Dkt. #70 at 5-6, 14); and, as noted by Petitioner, those courts determined that "Petitioner offered insufficient evidence that trial counsel malpracticed." (Dkt. #3 at 22). For instance, as described in the R&R, the notion that Haros's testimony was supported by an immunity deal (*see, e.g.*, Dkt. #5-6 at 9, 11) was presented to the jury during the trial, supporting the finding of the post-conviction courts that no prejudice resulted even if such an agreement existed. *See* Dkt. #70 at 14- 15 (explaining the state courts' findings regarding alleged immunity agreements).

Finally, the Court cannot discern how further cross-examination of Hunter at the August 14, 2008 evidentiary hearing before Judge Duncan might have provided greater factual insight into his assistance of Petitioner. The only testimony that Hunter could offer was that "he did not recall events leading up to his representation of Ochoa, what happened during his trial, and most of the events after the trial." Dkt. #70 at 8. Therefore, the Court's review of the record submitted by Petitioner does not indicate that the R&R's analysis misinterprets or misstates the facts.

**B.    Objections to legal conclusions in the R&R.**

**1.    Second claim: *Brady* violations.**

A prosecutor violates a defendant's federal due process rights by suppressing material evidence favorable to the accused. *Brady*, 373 U.S. at 87. Evidence is material if there exists "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). This duty to disclose extends to both exculpatory and impeachment evidence, whether known to the prosecution or "others acting on the government's behalf . . . including the police." *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (citation omitted). Hence, deliberate concealment or inadvertent non-disclosure of evidence showing that prosecution witnesses were granted immunity in exchange for their testimony violates a defendant's due process rights if prejudice ensued. *See Giglio v. United States,* 405 U.S. 150, 154 (1972); *Napue v. Illinois*, 360 U.S. 264, 269-70 (1959); *Hayes v. Brown*, 399 F.3d 972, 978-79 (9th Cir. 2005); *see also Strickler*, 527 U.S. at 281-82 ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued."). "Mere speculation that some exculpatory material may have been withheld," however, "is unlikely to establish good cause for a discovery request on collateral review." *Strickler*, 527 U.S. at 286.

Petitioner objects to the R&R's application of *Alderman*, in ruling that his petition does not present evidence sufficient to show a *Brady* violation. Dkt. #74 at 5-7. He asserts

1  that the R&R distorts *Alderman* because that case conducted an additional evidentiary
2  hearing to support its analysis, and he cites *Hayes*, *Silva v. Woodford* ("*Silva I*"), 279 F.3d
3  825 (9th Cir. 2005), and *Silva v. Brown* ("*Silva II*"), 416 F.3d 980 (9th Cir. 2005), as more
4  appropriate analogies to his case.

5         In *Alderman*, the Eleventh Circuit examined a petitioner's procedurally defaulted
6  *Brady* claim to determine whether a fundamental miscarriage of justice justified reopening
7  that claim on *habeas* review. 22 F.3d at 1553-55. To support this inquiry, the district court
8  conducted an evidentiary hearing in which a key prosecution witness testified about his pre-
9  trial communications with prosecutors. *Id.* at 1554-55. The district court determined that
10 "whatever impression [the prosecutor] may have had or communicated to [the witness], it did
11 not serve as the motivating factor for [the witness's] testifying against the Petitioner." *Id.*
12 at 1554. Accordingly, the court ruled that the petitioner had failed to meet his burden under
13 *Brady* because (1) he had presented no evidence of an agreement, and (2) even if such
14 evidence existed, it would not undermine the witness's credibility. *Id.* at 1555. In
15 concluding its *Brady* analysis, the court observed that "[w]here there is, in fact, no
16 agreement, there is no duty to disclose." *Id.*

17        Like the witness in *Alderman*, Sanchez did not require any additional inducements to
18 testify against Petitioner. By his own admission, Petitioner was one of Sanchez's abductors.
19 *See* Dkt. #70 at 1-2. Also like *Alderman*, the record does not show that the police or the
20 prosecution granted Sanchez any immunity despite Hunter's repeated attempts to cross-
21 examine Sanchez and insinuate this. *See, e.g.*, Dkt. #37-4 at 83-85, 95-100 (cross-examining
22 Sanchez about possible immunity; court explaining that a denial of an immunity agreement
23 was already on the record, and explaining that trial counsel "may ask [Sanchez] if he has
24 made any deals with law enforcement" but that he could not "present evidence from which
25 [the jurors] can speculate and guess that a deal was done, even though it is denied")); *see also*
26 Dkt. #35-7 at 1-62 (Hunter conducting further cross-examination of Sanchez; court
27 delineating proper limits of that cross-examination). Likewise, as noted in the R&R, Haros
28 described her relationship with the police in detail, eliminating the possibility of prejudice.

1  Dkt. #70 at 14-15; *see, e.g.*, Dkt. #37-6 at 10-14; 17-35; 38-39; 42-50; 58-69.

2  For the same reasons, Petitioner's reliance on *Hayes*, *Silva I*, and *Silva II* is misplaced.
3  The petitioners in those cases presented direct evidence of agreements between prosecutors
4  and witnesses, rather than mere inferences based on non-prosecution. *See Hayes*, 399 F.3d
5  at 978-80 (discussing dismissal of pending charges against witnesses and corresponding
6  plans to arrange these dismissals in prosecutors' files); *Silva I*, 279 F.3d 853-54 (analyzing
7  declaration from a trial attorney regarding a concealed agreement to forgo psychiatric
8  examination as part of a deal with prosecutors); *Silva II*, 416 F.3d at 985-85 (further
9  analyzing the trial attorney's declaration in *Silva I*). Petitioner has presented no evidence
10 of an immunity deal for either Sanchez or Haros. He instead speculates that deals must have
11 been struck with both witnesses because neither was prosecuted for past wrongdoing. Such
12 speculation is not sufficient to show prejudice. *See Strickler*, 527 U.S. at 286 (holding that
13 speculation is insufficient to invoke *Brady*); *Alderman*, 22 F.3d at 1555 (noting that *Brady*'s
14 disclosure duty is not violated if there is no material, favorable evidence to disclose).

15           **2.      Third claim: errors in post-conviction discovery.**

16 "'[A] petition alleging errors in the state post-conviction review process is not
17 addressable through *habeas corpus* proceedings.'" *Hubbart v. Knapp*, 379 F.3d 773, 779
18 (9th Cir. 2004) (quoting *Franzen*, 877 F.2d at 26). Petitioner objects to the R&R's citation
19 of *Franzen* and *Ortiz* for this rule. He asserts that *Franzen* decided "a state claim and not
20 a federal constitutional claim" and that *Ortiz* holds only that "there is no constitutional right
21 to an attorney in state post-conviction proceedings." Dkt. #74 at 8-9 (citing *Ortiz*, 149 F.3d
22 at 939). This argument is incorrect.

23 The petitioner in *Franzen* alleged that a "delay of over a year in deciding his petition
24 for state post-conviction relief violated his due process rights." *See* 877 F.2d at 26. After
25 reviewing decisions from other circuits, the Ninth Circuit decided to "join the majority and
26 affirm the district court's holding that a petition alleging errors in the state post-conviction
27 review process is not addressable though *habeas corpus* proceedings." *Id. Franzen* and the
28 cases it cites are based on the fact that *habeas* proceedings are designed to attack the basis

- 11 -

1  for the petitioner's detention, and a petitioner is not detained as a result of post-conviction
2  proceedings. *Habeas* relief, therefore, is not available to redress errors occurring in post-
3  conviction proceedings. Because Petitioner's third claim alleges that errors occurred during
4  post-conviction discovery, it is not cognizable for purposes of *habeas* relief. *See id.*; *see also*
5  *Hubbart*, 379 F.3d at 779.

### 3. Fourth claim: *Strickland* deficiency regarding *Brady* violations.

7  Petitioner bears the burden of proving ineffective assistance of trial counsel. *See*
8  *Strickland*, 466 U.S. at 686-87. Petitioner must show that "counsel's performance was
9  deficient" and that "the deficient performance prejudiced the defense." *Id.* at 687. The
10 second prong of *Strickland* requires that a petitioner show "a reasonable probability that, but
11 for counsel's unprofessional errors, the result of the proceeding would have been different."
12 *Id.* at 694; *see Downs v. Hoyt*, 232 F.3d 1031, 1038 (9th Cir. 2000) (reaffirming this burden).
13 Counsel is not ineffective by failing to make motions that he reasonably determines to be
14 futile, and a state court's conclusion that counsel reached such a determination on the facts
15 is not an objectively unreasonable application of *Strickland*. *See Rupe v. Wood*, 93 F.3d
16 1434, 1445 (9th Cir. 1996).

17 As noted above, Petitioner has not offered evidence showing that an immunity
18 agreement existed for Sanchez and Haros's testimony described her relationship with the
19 police in great detail. *See* Dkt. ##37-4 at 83-85, 95-100; 37-6 at 58-59. A prosecution's
20 failure to disclose a non-existent agreement offers no legal basis for trial counsel to litigate
21 a *Brady* violation. *See Alderman*, 22 F.3d at 1555; *cf. Rupe*, 93 F.3d at 1445 (determining
22 that failure to make baseless arguments cannot amount to a *Strickland* deficiency). Also,
23 Petitioner's assertion that Hunter failed to press this issue at trial (Dkt. #74 at 5-7) is
24 unconvincing in view of the trial record. *See* Dkt. #37-4 at 95-100; 37-5 at 1-20 (discussing
25 Sanchez's past offenses with judge; cross-examining Sanchez). Petitioner has not shown that
26 Hunter's failure to litigate purported *Brady* violations amounted to a deficiency within the
27 meaning of *Strickland*, nor that litigating such issues likely would have resulted in a different
28 outcome at trial.

### 4. Sixth Claim: general *Strickland* deficiency.

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury," but there is a "strong presumption" that trial counsel acted reasonably and effectively in representing a petitioner. *Strickland*, 466 U.S. at 689, 695 (stating that "[j]udicial scrutiny of counsel's performance must be highly deferential," and errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). In particular, a strategic decision to avoid certain lines of argument is worthy of deference if the reviewing court can reasonably infer that the decision was based on counsel's professional judgment. *See id.* at 681.

Petitioner's first objection to the R&R's analysis is that the Yuma Country indigent services system was "a legal cesspool" where contract attorneys were overworked, underpaid, and harassed. Dkt. #74 at 11. Petitioner cannot prevail, however, by showing general defects in the system. He must show a deficiency on the part of his trial counsel which violates the Sixth Amendment. *See Strickland*, 466 U.S. at 687.

Petitioner's second objection is that the R&R fails to reflect portions of the record indicating that trial counsel (1) admitted his heavy workload, (2) was "admonished" for insufficient preparation, (3) did not file appropriate motions during pre-trial proceedings, and (4) delivered a lackluster opening statement. Dkt. #74 at 12-13. As correctly noted in the R&R, however, the portions of the record cited in Petitioner's pleadings (but not his objections) indicate that Hunter was reasonably effective, and was never admonished by the trial court even though he formulated questions slowly during cross-examination. Dkt. #70 at 15-17 (citing Dkt. #37, Ex. Q at 31-33, Ex. P at 216, 239, 241-42, 251); *see* Dkt. #37-6 at 52-55 (Hunter stating that "I have been overworked in this case. That is true. But I disagree I am not prepared. And just because I am slow and deliberate does not mean that I am inept;" court stating that "we are moving so slowly . . . . it seems to me you are simply sitting there and stalling – I am not talking about your [a]ptitude or your ability[.]").

Trial counsel was, however, held in contempt for repeatedly and disrespectfully questioning the court's decision to prevent detailed cross-examination of Haros about her

role as an informant. Dkt. #37-6 at 53 ("I don't like the court's remarks, for what it's worth[.]"). Nevertheless, that order was vacated during subsequent cross-examination when Hunter acquiesced to the court's requests by simply asking Haros if she was an informant. She responded "yes." Dkt. #37-6 at 56, 58. The Court finds no sound reason to set aside the strong presumption that Hunter was reasonably effective during cross-examination. *See Strickland*, 466 U.S. at 689, 695.

Petitioner's third objection is that Judge Duncan "never conducted a prejudicial analysis for each of the [factual] claims" in his petition, which is followed by a re-statement of those claims. Dkt. #74 at 14-16 (alleging trial counsel unreasonably failed to introduce additional evidence, witnesses, and expert testimony). This argument improperly attempts to impose Petitioner's burden under the second prong of *Strickland* upon the Court. *See Strickland*, 466 U.S. at 687 (holding that petitioner must show both a deficiency and resulting prejudice). The only argument that Petitioner offers regarding prejudice is that "Petitioner is prejudiced by the state [post-conviction] court's denial of an evidentiary hearing in 2001." Dkt. #74 at 14. But this is irrelevant to Hunter's performance at trial six years earlier, and such procedural errors are not cognizable in this action. *See Hubbart,* 379 F.3d at 779; *Franzen*, 877 F.2d at 26; *Ortiz,* 149 F.3d at 939.

Finally, as explained in the R&R, Petitioner's factual arguments regarding Hunter's choices not to pursue certain lines of argument or to introduce further evidence can be explained by either (1) strategic considerations or (2) the likely futility of those maneuvers. *See* Dkt. #70 at 15-18 (citing *Rupe*, 93 F.3d at 1445; *Wildman*, 261 F.3d at 839); *see Strickland*, 466 U.S. at 681. But again, even assuming these choices indicated a deficiency on the part of trial counsel, Petitioner has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 F.3d at 694.[3] He therefore fails to meet his burden on his general *Strickland*

---

[3]The Court observes that the court of appeals analyzed prejudice with respect to Petitioner's claims under *Strickland* and concluded that the evidence against him was so substantial that his allegations regarding trial counsel's performance did not indicate any

- 14 -

1  claim.

2  **C.  Filings subsequent to Petitioner's objections.**

3  Unless a court orders otherwise, parties have ten days to file specific objections to a ruling and recommendation on a petition for writ of *habeas corpus*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), (6)(e). Neither Petitioner's timely objections nor his "notice of substandard briefing and explanation" cite any legal authority suggesting that he can "substitute" his objections with a revised document after this deadline, much less after a response is filed. *See* Dkt. #77 at 5. Moreover, counsel's explanations for his "substandard briefing" notwithstanding, adequate mechanisms exist for extending filing deadlines. *See, e.g.*, Dkt. #71, 73 (motion for, and order of, extension of time to file written objections); *cf.* Dkt. #70 at 9 ("In light of the numerous previous continuances granted to the parties in this case . . . the Court will not be inclined to grant any extensions[.]").

The Court will therefore treat Petitioner's notice as a motion for leave to file further objections to the R&R, and deny that motion. Likewise, the Court will deny the motion to prepare a transcript of the August 14, 2008 evidentiary hearing. Petitioner states that he intends to use that transcript to "supplement" his timely objections. The time for asserting objections has passed.

**IT IS ORDERED:**

1. United States Magistrate Judge Duncan's R&R (Dkt. #70) is **accepted**.
2. Petitioner Ochoa's petition for writ of *habeas corpus* (Dkt. #1) is **dismissed**.
3. Petitioner Ochoa's notice of substandard briefing and explanation (Dkt. #77), which the Court treats as a motion for leave to file further objections to the R&R, is **denied**.
4. Petitioner Ochoa's motion to prepare a transcript free of cost (Dkt. #78) is **denied** without prejudice.

---

prejudicial effect, even if presumed true. *See* Dkt. #20, Ex. F at 1-5.

5. The Clerk shall **terminate** this action.

DATED this 24th day of April, 2009.

*David G. Campbell*
United States District Judge

- 16 -